IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| INEZ ROSALES, on behalf of herself and in representation of her minor daughter, K.L.R., <br><br> **Plaintiff**, <br><br> v. <br><br> ENCANTO RESTAURANTS, INC., *et al.*, <br><br> **Defendants**. | CIVIL NO. 12-1612 (FAB) |

**MEMORANDUM AND ORDER**

BESOSA, District Judge.

On November 21, 2013, defendants Encanto Restaurants, Inc. and Triple-S Propiedad, Inc. filed a motion for summary judgment for lack of subject matter jurisdiction.  (Docket No. 25.)  They argue that the case must be dismissed because no diversity jurisdiction exists between all plaintiffs and defendants because minor K.L.R. ("Kylie")'s domicile lies in Puerto Rico, which is defendants' domicile.  Plaintiffs oppose the motion, arguing that diversity exists because Kylie's domicile is that of her biological mother, who is a citizen of Arizona.  (Docket No. 26.)

I.  **UNCONTESTED MATERIAL FACTS**

Kylie was born on January 15, 1996 in Arizona, and was a minor at the time of the filing of the complaint.  (Docket No. 25-1 at p. 1; Docket No. 27 at p. 1.)  Her biological mother, Inez Rosales, remained in Arizona after giving birth, and Kylie moved to Puerto

Civil No. 12-1612 (FAB)                                               2

Rico to live with her maternal grandmother, Mrs. Betancourt, when Kylie was six weeks old.  Id.  Since the time that Kylie left Arizona, she has lived with Mrs. Betancourt and Mrs. Betancourt's common law husband, Carlos Jimenez.  (Docket No. 25-3 at p. 17; Docket No. 25-4 at p. 8.)  Mrs. Betancourt considers herself Kylie's "mother and grandmother."  (Docket No. 25-2 at p. 16.) Kylie refers to Mrs. Betancourt and Mr. Jimenez collectively as "my parents," (Docket No. 25-4 at p. 8), Mrs. Betancourt as "[m]y grandma – my mom," id., and Mr. Jimenez as "my dad."  Id. at p. 7. Kylie speaks to her biological mother every day or every other day on the telephone, Facebook, and OoVoo, but Kylie has never lived with Ms. Rosales.[1]  (Docket No. 25-3 at p. 21; Docket No. 25-2 at pp. 19-20.)  Kylie only sees her biological mother on a "yearly basis" and has gone to visit Ms. Rosales in Arizona a mere "three or four times" in her lifetime.  (Docket No. 25-4 at pp. 23-24.)

Mrs. Betancourt provided full financial support for Kylie until Mrs. Betancourt lost her job approximately six to eight years ago.  (Docket No. 25-1 at p. 2; Docket No. 27 at p. 1.)  Once Mrs. Betancourt stopped working, Ms. Rosales began to pay for most

---

[1] Only for a brief four-month period when Kylie was eleven years old did Kylie ever live in Arizona.  (Docket No. 25-2 at p. 19.)  Because Mrs. Betancourt's son — Ms. Rosales' sister — needed Mrs. Betancourt's assistance, she and Kylie went together to Arizona to stay at his home.  Id. at p. 16.  Because Ms. Rosales was living with her brother at the time, Kylie lived under the same roof as her biological mother and Mrs. Betancourt for four months.

of Kylie's expenses.[2]  (Docket No. 25-2 at pp. 12-13.)  Currently, Ms. Rosales sends approximately $260 to Mrs. Betancourt every two weeks to help with Kylie's expenses.  Id. at p. 31.  During periods when Ms. Rosales is not employed, however, Mrs. Betancourt pays for Kylie's expenses.  Id. at p. 15.  Ms. Rosales claims that she and Mrs. Betancourt "work together as a team to provide for what my daughter needs."  (Docket No. 25-3 at p. 66.)  Ms. Rosales gave Mrs. Betancourt "notarized documents" authorizing Mrs. Betancourt to take Kylie to the hospital for medical treatment, id. at p. 31, but she claims that Mrs. Betancourt does not have legal custody of Kylie and that Ms. Rosales must give her authorization for major decisions concerning Kylie to be taken.  Id. at pp. 32–33.

## II.  DISCUSSION

In order to satisfy the requirements of diversity jurisdiction, the amount in controversy of a case must exceed $75,000, and all plaintiffs must be diverse from all defendants. 28 U.S.C. § 1332(a).  "[T]he presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action."  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005).  Whether there is diversity between all plaintiffs and all defendants depends on

---

[2] Kylie has never received any support from her biological father and has never had a relationship with him.  (Docket No. 25-1 at p. 2; Docket No. 27 at p. 1.)

Civil No. 12-1612 (FAB)                                              4

each party's domicile.  See Padilla-Mangual v. Pavia Hosp., 516 F.3d 29, 31 (1st Cir. 2008).  A person's domicile "is the place where he [or she] has his [or her] true, fixed home and principal establishment, and to which, whenever he [or she] is absent, he [or she] has the intention of returning."  Rodriguez-Diaz v. Sierra-Martinez, 853 F.2d 1027, 1029 (1st Cir. 1988) (citing C. Wright, A. Miller & E. Cooper, 13 B Federal Practice & Procedure § 3612, at 526 (1984)).  A minor's domicile, however, is generally that of his or her parents.  Rodriguez-Diaz, 853 F.2d at 1031.

Defendants cite several cases identifying an exception to the general rule that a minor assumes his or her parent's domicile: "[a] child who lives with nonparents who act *in loco parentis* takes the domicile of the custodians and not that of the parents." (Docket No. 25-5 at p. 8) (citing Linville v. Price, 572 F. Supp. 345, 348 (S.D. W. Va. 1983); Elliott v. Krear, 466 F. Supp. 444, 447 (E.D. Va. 1979); and Ziady v. Curley, 396 F.2d 873, 875 (4th Cir. 1968)); see also Rodriguez-Diaz, 853 F.2d at 1033–34 (citing Ziady, Elliott, and Linville as examples of when "federal courts will deviate if necessary in order to achieve the purposes of the diversity statute").  Defendants contend that "the mosaic of circumstances surrounding Kylie's care and control" invokes the exception because Kylie's grandparents act *in loco parentis* and live in Puerto Rico.  (Docket No. 25-5 at p. 11.)  Plaintiffs oppose defendants' motion, arguing that because Ms. Rosales has

provided financial support for Kylie, and because Ms. Rosales' *patria potestas* over Kylie has never been suspended, Kylie's domicile should be that of Ms. Rosales, not that of her grandparents.  (Docket No. 26.)

In considering a minor's citizenship in the context of diversity, the Court agrees that "the fundamental policy underlying diversity jurisdiction — the protection of out-of-state litigants from local bias — rather than technical rules of domicile, should control."  Canty v. Goetz, 1985 U.S. Dist. LEXIS 17081, 8-9 (S.D.N.Y. Aug. 7, 1985) (citing Ziady, 396 F.2d at 875 and 13B Wright & Miller § 3611, at 510 ("A few recent cases quite rightly have . . . advocat[ed] that more attention be given to the diversity jurisdiction policy of protecting the out-of-state litigant from local bias.")).  The First Circuit Court of Appeals has recognized that "a number of cases have arisen from the tension . . . between technical presumptions as to the domicile of a minor and the realities of the minor's actual situation," Rodriguez-Diaz, 853 F.2d at 1033–34, and this case is no exception.  Kylie is certainly no stranger to Puerto Rico.  She has lived in the Commonwealth with Mrs. Betancourt and Mr. Jimenez for seventeen years; she has gone to the same school in Puerto Rico since kindergarten; and she has no contact with Arizona except for having visited the state three or four times.  Although Ms. Rosales claims to retain legal custody of her daughter, it is clear that Kylie has

Civil No. 12-1612 (FAB)                                                        6

lived nearly 3,000 miles away and an ocean apart from her biological mother for almost all of her life.  Since Kylie was *six weeks old*, Mrs. Betancourt and Mr. Jimenez have retained actual custody and control over her in Puerto Rico.  The only extended amount of time that Kylie has ever spent in Arizona occurred when she was eleven years old, and when she and her grandmother stayed with Mrs. Betancourt's son for four months.  The record also makes clear that Mrs. Betancourt and Mr. Jimenez act *in loco parentis* by providing for Kylie's support, maintenance, protection, and guidance in Puerto Rico.  Ms. Rosales sends $520 per month to Mrs. Betancourt for Kylie's education and other expenses, and although she claims that she must give her authorization for important decisions affecting Kylie's well-being to be taken, she only sees Kylie on a yearly basis.

"[F]or all practical purposes, and for the specific purpose envisioned by the founding fathers," Kylie is a stranger to the state of Arizona.  See <u>Ziady</u>, 396 F.2d at 875.  Applying the general rule that Kylie assume Arizona domicile, therefore, "would in no way comport with the policy underlying diversity jurisdiction" — that Kylie be given access to an unbiased court to protect her from parochialism if she were forced into litigation in another state in which she was a stranger and of which her opponent was a citizen.  See <u>Elliott</u>, 466 F. Supp. at 447; <u>Ziady</u>, 396 F.2d at 875.  Instead, attributing Arizona domicile to Kylie would

Civil No. 12-1612 (FAB)                                                    7

produce "strange results" because it would permit Kylie to remove the case against Puerto Rico-domiciled defendants to federal court, despite the fact that all of Kylie's significant contacts are also with Puerto Rico.  Ziady, 396 F.2d at 875.

The diversity clause was not "intended to give persons in plaintiff's situation special access to federal courts when they become involved in a dispute of a purely local nature." Ziady, 396 F.2d at 875.  The Court, therefore, "feel[s] free to make the choice [it] think[s] fits best with the aims of the diversity statute," Rodriguez-Diaz, 853 F.2d at 1033, and finds that where all of a minor's significant contacts are with Puerto Rico through her relationship with *in loco parentis* grandparents, and the policy underlying diversity jurisdiction does not support citizenship elsewhere, the minor should not assume the domicile of her parent outside of Puerto Rico in order to create diversity.  Accordingly, it is Mrs. Betancourt's domicile in Puerto Rico — not Ms. Rosales' domicile in Arizona — that dictates Kylie's citizenship.[3]  Because

---

[3] Plaintiffs' discussion regarding Ms. Rosales' rights pursuant to the *patria potestas* doctrine is misplaced.  The issue of domicile for diversity purposes is distinct from Ms. Rosales' ability to sue on behalf of Kylie or her alleged rights under Puerto Rico law.  Thus, by determining that Kylie's domicile is that of her grandmother instead of that of her biological mother, the Court is in no way affecting or "depriv[ing] Inez [Rosales] of her duty and rights stemming from her *patria potestas* over Kylie." (Docket No. 26 at p. 5.)  Ms. Rosales remains as Kylie's representative in the lawsuit; because not all plaintiffs are diverse from all defendants, however, the case must be filed in the Commonwealth of Puerto Rico's courts, not the federal court.

Civil No. 12-1612 (FAB)                                                         8

defendants are also citizens of Puerto Rico, diversity is destroyed, and the case must be **DISMISSED WITHOUT PREJUDICE.**

**III. CONCLUSION**

Because plaintiff minor K.L.R. is domiciled in Puerto Rico, complete diversity between the parties does not exist, and the Court lacks subject matter jurisdiction over the case. Accordingly, defendants' motion for summary judgment is **GRANTED** and the case is **DISMISSED WITHOUT PREJUDICE.** Judgment shall be entered accordingly.

The pretrial conference scheduled for February 7, 2014 and the jury trial scheduled to commence on February 18, 2014 are set aside.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, February 4, 2014.

                                        s/ Francisco A. Besosa
                                        FRANCISCO A. BESOSA
                                        UNITED STATES DISTRICT JUDGE